# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **Valerio's, Inc., et al.,** | ) | Case No. |
| | ) | |
| Plaintiffs, | ) | Judge |
| | ) | |
| vs. | ) | |
| | ) | |
| **Erie Insurance Exchange,** | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF REMOVAL

Defendant, Erie Insurance Exchange ("Erie"), through undersigned counsel and pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, and under the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in pertinent part at 28 U.S.C. §§ 1332(d), 1446, and 1453) ("CAFA"), hereby removes the action captioned *Valerio's Inc., et al. v. Erie Insurance Exchange,* Case No. CV-20-932204, from the Cuyahoga County Court of Common Pleas to the United States District Court for the Northern District of Ohio, Eastern Division.

## INTRODUCTION

1. On April 29, 2020, Plaintiff Valerio's, Inc. filed a Complaint against Erie in the Cuyahoga County Court of Common Pleas. In accordance with 28 U.S.C. § 1446(a), copies of the Summons and Complaint are attached as Exhibit A.

2. On May 4, 2020, Valerio's filed an Amended Complaint, adding The Fairmount, Inc. ("Fairmount," collectively with Valerio's, "Plaintiffs") and asserting class-action allegations under Ohio Civ. R. 23 for breach of contract and declaratory relief on behalf of "[a]ll persons

and entities in Ohio" insured by Erie under certain policies of insurance. Copies of the Summons and Amended Complaint ("Am. Compl.") are attached hereto as Exhibit B.

3. According to the Amended Complaint, Plaintiffs filed this suit on behalf of themselves and a putative class consisting of "all persons and entities in Ohio insured under a commercial insurance policy issued by Erie Insurance Exchange . . . that did not include an applicable exclusion for virus coverage" who "made a claim with Erie, which Erie denied, for lost or diminished business income and/or extra expense resulting from the suspension or curtailment of business due to the COVID-19 Pandemic and/or SARS-CoV-2 virus and/or the disease known as COVID-19 and/or Ohio's civil authority order relating thereto." Am. Compl. ¶ 29. Plaintiffs and the putative class seek damages for alleged breach of contract and declaratory relief.

4. Erie received a copy of the Complaint and Amended Complaint on May 4 and May 8, respectively, by certified mail. The Summonses and Complaints are the only case documents sent to Erie by Plaintiffs. Attempted service of process by certified mail is ineffective as a matter of law, and hence Erie has not to date been properly served with the Amended Complaint. Thus, this notice is timely under 28 U.S.C. § 1446(b).

5. The Cuyahoga County Court of Common Pleas is within the Northern District of Ohio, Eastern Division. 28 U.S.C. § 84(a). This notice is therefore properly filed in this court under 28 U.S.C. § 1441(a).

6. As explained below, this action is removable under CAFA, as there is minimal diversity, more than 100 class members, and the amount in controversy exceeds $5,000,000.

## PARTIES

7. Valerio's is an Ohio corporation that does business as Valerio's Ristorante in Cleveland, Ohio. Am. Compl. ¶ 1.

8. Fairmount is an Ohio corporation that does business as The Fairmount in Cleveland Heights, Ohio. *Id.* ¶ 2.

9. Erie is a reciprocal insurance exchange domiciled in Pennsylvania, with its principal place of business in Erie, Pennsylvania. *Id.* ¶ 3.

## THE ALLEGATIONS

10. Plaintiffs allege that they purchased Erie commercial insurance policies that provided income-protection coverage, extra-expense coverage, and coverage for loss due to the actions of civil authorities.[1] Am. Compl. ¶¶ 4-7.

11. Plaintiffs allege that these coverage provisions are specifically found in the following Erie form insurance policies: PK-00-01 (Ed. 9/18) CL-0001, PK-00-01 (Ed. 1/20) CL-0001, and PK-JK (Ed. 9/18) CL-0348. *Id.* These policy forms are issued as the "Ultrapack Plus Policy."

12. Plaintiffs allege: "[W]hile the Valerio's policy and the Fairmount Policy were in force, Valerio's and The Fairmount sustained, and continue to sustain, covered losses due to the presence, and the risk of the presence, of the pathogen that causes COVID-19 within and on the insured premises, as well as within and on other premises in the immediate vicinity." *Id.* ¶ 8.

---

[1] The facts set forth herein derive from Plaintiffs' Amended Complaint. Erie does not admit the facts alleged in the Amended Complaint, expressly denies liability to Plaintiffs and the putative class, expressly denies that certification of any class is appropriate or permitted under the applicable rules, and reserves its rights to challenge the legal sufficiency of the Amended Complaint.

13. Plaintiffs further allege that as a direct and proximate result of Ohio Governor Mike DeWine's Executive Order 2020-01D, issued March 9, 2020, and the March 11 and March 15 orders of Dr. Amy Acton, Director of the Ohio Department of Health:

> Valerio's and The Fairmount have been compelled to restrict their business activities at the insured premises to carry-out service only, and as a result, both have sustained, and will continue to sustain, serious business interruption losses and other damages that are covered under the policies issued to them by Erie.

*Id.* ¶ 12.

14. Plaintiffs further allege that members of the putative class "have sustained loss of business income, extra expense, and other covered losses due to the presence, and the risk of the presence, of the pathogen that causes COVID-19 within and on the insured premises, as well as within and on other premises in the immediate vicinity, and as well as to actions of civil authority." *Id.* ¶ 26.

15. Both Valerio's and Fairmount submitted claims to Erie for coverage for their alleged losses under their Erie policies. *Id*. ¶¶ 16-18. The Amended Complaint alleges that Erie denied both claims on April 21, 2020. *Id*. ¶¶ 17-18. The Amended Complaint further alleges that Erie has denied claims of other putative class members. *Id*. ¶ 26.

## THE AMENDED COMPLAINT

16. Based upon these allegations, Plaintiffs, on behalf of themselves and the putative class, assert the following claims against Erie:

> **Count I** alleges that Erie breached its coverage obligations under the policies issued to Plaintiffs and other putative class members by purportedly denying coverage for the alleged business losses incurred by Plaintiffs in connection with the Orders issued by the Governor of Ohio and the Ohio Director of Health and the COVID-19 pandemic. Am. Compl. ¶ 48.
>
> **Count II** seeks a declaratory judgment declaring that Plaintiffs' and the putative class members' losses were "incurred as a result of, and in

connection with, the drastic curtailment and/or cessation of their business activities due to the COVID-19 pandemic" and that such losses are "insured losses under the policies issued by Erie" that, "once documented, Erie shall be obligated to pay the full amount of those expenses or to pay policy limits, whichever is less." *Id.* ¶ 52.

## REMOVAL UNDER CAFA

17. CAFA was enacted to broaden the scope of federal jurisdiction in class-action suits. *Davenport v. Lockwood, Andrews & Newnam, Inc.,* 854 F.3d 905, 910 (6th Cir. 2017). Removal is proper under CAFA where, as here, a purported class action is filed in which there is (a) minimal diversity of citizenship; (b) 100 or more purported class members; and (c) the aggregate amount in controversy for the proposed putative class exceeds $5,000,000, exclusive of costs and interest. 28 U.S.C. § 1332(d)(2).

### A. The Putative Class Satisfies Minimal Diversity Of Citizenship

18. CAFA requires only "minimal diversity," meaning that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

19. Valerio's and Fairmount allege that they are Ohio corporations with their principal places of business in Ohio. Am. Compl. ¶¶ 1-2. Plaintiffs appear to be citizens of Ohio.

20. Erie is not a citizen of Ohio and hence there is minimal diversity under CAFA.

21. Erie is a citizen of Pennsylvania for purposes of citizenship under CAFA. Erie is a reciprocal insurance exchange, which is a type of unincorporated association. *See Erie Insurance Exchange v. Potomac Electric and Power Co.*, 2014 WL 1757949, *2 (D. Md. April 29, 2014). In enacting CAFA, Congress granted unincorporated associations such as reciprocal insurance exchanges the ability to invoke federal jurisdiction to the same extent as corporations and other similar legal entities. *See* 28 U.S.C. §1332(d)(10) ("an unincorporated association

shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.").

22. Under CAFA, a reciprocal insurance exchange such as Erie is considered an "unincorporated association" under §1332(d)(10), and thus is deemed a citizen only of the state(s): (a) where it has its principal place of business and (b) under whose laws it is organized. *Erie Insurance Exchange v. Potomac Electric and Power Co.*, 2014 WL 1757949 *2 n. 1 (D. Md. April 29, 2014); *Miller v. Farmers Insurance Group*, 2010 WL 11451123, *1 (W.D. Okl. July 26, 2010). *See also Ferrell v. Express Check Advance of SC LLC,* 591 F.3d 698, 703-05 (4th Cir. 2010); *Bond v. Veolia Water Indianapolis*, LLC, 571 F. Supp.2d 905, 909-12 (S.D. Ind. 2008). Because Erie is organized under Pennsylvania law and has its principal place of business in Pennsylvania, under CAFA it is deemed a citizen of Pennsylvania, and hence there is minimal diversity between Plaintiffs and the putative class on the one hand, and Erie on the other hand.

### B.  The Putative Class Contains 100 Or More Members

23. This case purports to be a "class action" within the meaning of CAFA because Plaintiffs allege that "[Erie] has issued hundreds, if not thousands, of standardized polices such as the ones it issued to Valerio's and The Fairmount to businesses located in Ohio." Am. Compl. ¶ 31. Plaintiffs contend that "it is apparent that the members of the class are so numerous that individual joinder would be impracticable." Am. Compl. ¶ 33.

24. Plaintiffs allege that "Erie has issued policies of insurance to *thousands* of Ohio businesses using the same standard forms and language for loss of business income, extra expense and actions of civil authorities as Erie used in the Ultrapack Plus Policies it issued to" Plaintiffs. Am. Compl. ¶ 25 (emphasis added). Plaintiffs allege that "many" of those "thousands" of Ohio businesses will be in the class. *Id*. ¶ 26. Plaintiff admits that the putative

class will consist of more than 100 class members: "it is clear that the class as defined above *consists of many hundreds, if not thousands*, of affected individuals and businesses." Id. ¶ 32 (emphasis added).

### C. The Aggregate Amount In Controversy Exceeds $5,000,000

25. Erie disputes that Plaintiffs have stated any viable claims and also disputes that Plaintiffs and the putative class members are entitled to any relief. Nevertheless, the allegations of the Amended Complaint and the nature of Plaintiffs' claims make clear that the amount in controversy exceeds CAFA's jurisdictional threshold of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2) and (6).

26. CAFA requires that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs." 28 U.S.C. §1332(d)(6).

27. Where, as here, the complaint does not state the amount in controversy, the defendant's notice of removal may do so. *Dart Cherokee Basin Operating Company*, *LLC*, *v. Owens*, 574 U.S. 81, 84 (2014). To establish the amount in controversy sufficient to remove a class-action case to federal court, a defendant need not submit proof to establish the amount in dispute, but rather "may simply allege or assert that the jurisdictional threshold has been met." *Id.* at 554 (citation omitted). The amount in controversy is measured by a reasonable reading of the value of the rights being litigated. *Davis v. Kindred Nursing Centers East, LLC*, 2006 U.S. Dist. LEXIS 11425 *2 (S.D. Ohio 2006).

28. CAFA's amount in controversy requirement is satisfied where the proponent of federal jurisdiction shows that it is "more likely than not" that the stakes exceed $5,000,000. *Freeman v. Blue Ridge Paper Prods.,* 551 F.3d 405, 407 (6th Cir. 2008) (holding that district

court improperly remanded case to state court where defendant had shown that amount in controversy "more likely than not" exceeded amount in controversy); *Pittman v. Chase Home Fin., LLC*, No. 1:05-cv-2470, 2006 U.S. Dist. LEXIS 107795 at *7 (N.D. Ohio Feb. 3, 2006) (holding that because plaintiff's Complaint did not specify the amount of damages sought, and asserted that the number of putative class members was so numerous as to make joinder impracticable, defendant need only show that amount in controversy "more likely than not" exceeded jurisdictional threshold).

29. "The standard does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001) (internal quotations and citation omitted). *See also Pittman*, 2007 U.S. Dist. LEXIS 53859, at *9 (quoting *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447 (7th Cir. 2005) (the removing party must show only "a reasonable probability" that the amount in controversy requirement is satisfied)); *Dart Cherokee Basin Operating Co.*, 574 U.S. at 89 ("a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.").

30. The amount in controversy is satisfied on the *possible* recovery if Plaintiffs and the class were to win on all of their claims; whether they are likely to recover anything based on the merits of the case is irrelevant to the amount in controversy analysis. *See Norris v. People's Credit Co.*, No. 1:12CV3138, 2013 U.S. Dist. LEXIS 139327, at *7 (N.D. Ohio Sep. 27, 2013) (quoting *Cowit v. CitiMortgage, Inc.*, No. 1:12CV869, 2013 U.S. Dist. LEXIS 4591, 2013 WL 142893, *5 (S.D. Ohio 2013) (quoting *Brill v. Countrywide Home Loans*, 427 F.3d, 446, 448

(7th Cir. 2005) ("The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties."))).

31. Erie's good faith estimate of the stakes as alleged in the Amended Complaint includes the two components of Plaintiffs' claims: (i) compensatory damages for alleged breach of contract, and (ii) declaratory relief. Each element of Plaintiffs' damages, by itself, satisfies the minimum amount in controversy threshold. In the aggregate, Plaintiffs' claims clearly demonstrate that the potential damages exceed the jurisdictional minimum.

### i. *Compensatory Damages For Breach of Contract*

32. Plaintiffs provide no calculation of their own alleged damages, or those of putative class members, but Erie reasonably anticipates that class members will, on average, each seek tens of thousands of dollars in damages.

33. According to Plaintiffs, Erie has issued to Ohio businesses "thousands" of Ultrapack Plus policies that contain business income protection coverage. Am. Compl. ¶¶ 25, 31. Erie has according to its records issued 10,161 Ultrapack Plus insurance policies to Ohio businesses. *See* Declaration of Scot Morgason ("Morgason Dec.") ¶ 5.[2] Plaintiffs contend that "many" of those thousands of business will be members of the putative class. *Id*. ¶ 26.

34. While Plaintiffs do not offer any estimate as to the money damages they or any putative class members will seek, data exists upon which Erie may reasonably and conservatively estimate the amount in controversy in this case. *First*, Erie paid over 1,450 business-interruption claims during 2018 and 2019. Morgason Dec., ¶ 7. *Second*, The average payout for those years was approximately $11,900. *Id*.

---

[2] The Morgason Dec. is attached hereto as Exhibit C.

35. As set forth above, Plaintiffs contend that "many" of the 10,161 policyholders will be members of the putative class. Am. Compl. ¶ 26. Assuming—conservatively—that only ten percent (10%), or approximately 1,000 Erie-insured businesses in Ohio, have submitted, or will submit COVID business-interruption claims to Erie, and further assuming that Erie would, if coverage existed, pay the same approximate average amount ($11,900) on these claims as it has on past claims, it is reasonable to estimate that a potential payout on Plaintiffs' proposed putative class, if coverage existed, would exceed $11,900,000.

36. Of course, the above estimate is extremely conservative, for at least the following reasons: (a) Plaintiffs contend that "many" of the 10,161 policyholders will be members of the putative class, and the above estimate is based on a meager 10%—few, not many; (b) the $11,900 reflects the ultimate payment to insureds for covered losses, not the amounts sought by insureds, which in a significant number of cases was higher than the payouts for covered losses; and (c) the losses sought by Plaintiffs and members of the putative class will likely be significantly higher than $11,900, given the lengthy period of time in which Plaintiffs and putative class members limited or eliminated on-premises dining. But even under this conservative estimate the amount in controversy is significantly in excess of CAFA's $5 million minimum.

37. What's more, Erie has issued over 850 Erie Ultrapack Plus policies to Ohio bars and restaurants. Morgason Dec. ¶ 5. Assuming that each restaurant complied with State orders and limited its business activities to reduce the spread of COVID-19, and assuming that Erie were to pay the average business-interruption amount ($11,900) to each restaurant, it is reasonable to estimate that a potential payout on Plaintiffs' proposed putative class, if coverage existed, would exceed $10,115,000 to bars and restaurants alone.

38. In sum, because Plaintiffs seek significant actual damages, it is "obvious from a common-sense reading of the complaint", *see Oberle v. Solid Platforms, Inc.*, 2008 WL 2839021, * 3 (C.D. Ill. July 22, 2008), that no legitimate dispute exists that the amount at stake exceeds $5,000,000.

### ii.   *Declaratory Relief*

39. In addition to compensatory damages, Plaintiffs seek a declaratory judgment declaring (erroneously) that Erie's policies provide coverage for "losses incurred as a result of, and in connection with, the drastic curtailment and/or cessation of their business activities due to the COVID-19 pandemic."  Am. Compl. ¶ 52.  Such a declaration would fundamentally enlarge the scope of Erie's policies from providing coverage where physical damage causes business interruption, to policies that provide coverage in the absence of any physical damage but where a civil authority enters an order to enforce social distancing or to achieve some other supposed societal benefit.  Plaintiffs seek this relief for all putative class members.

40. In calculating the value of declaratory relief for amount in controversy purposes, the Court should consider the value of the consequences such relief would have on Erie.  *See e.g.*, *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011) (internal citation omitted) ("[W]here a party seeks a declaratory judgment, the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation.").  *See also Adams v. Am. Family Mut. Ins. Co*., 981 F. Supp. 2d 837, 847 (S.D. Iowa 2013) ("[I]n assessing the jurisdictional amount in declaratory relief cases, the federal court should include in its assessment the value of *all relief and benefits that would logically flow from the granting of the declaratory relief sought by the claimants*.")

(quoting S. Comm. on the Judiciary, Class Action Fairness Act of 2005, S. Rep. No. 109-14, at 2 (Feb. 28, 2005), reprinted in 2005 U.S.C.C.A.N. 3, 41, 2005 WL 627977) (emphasis added).

41. Erie has issued thousands of commercial policies with business interruption coverage to businesses in Ohio. Should Plaintiffs succeed in obtaining the declaratory relief they seek, each Ohio policyholder could potentially receive business interruption coverage not provided for by the terms and conditions of the policies—not only with respect to the COVID-19 pandemic, but with respect to potential future pandemics. This new benefit to all policyholders would logically flow from the granting of the declaratory relief Plaintiffs seek. The damage to Erie's business resulting from compliance with such a judgment would far exceed $5 million.

## ERIE HAS COMPLIED WITH ALL REMOVAL PROCEDURES

42. In accordance with 28 U.S.C. § 1446(d), a copy of this notice is being served on all counsel of record, and a copy is being filed with the clerk of the Cuyahoga County Court of Common Pleas.

43. In accordance with 28 U.S.C. § 1446(d), a true copy of all state court process, pleadings, and orders served on Erie is attached to this notice.

## NON-WAIVER OF DEFENSES

44. By filing this Notice of Removal, Erie does not waive any defenses available to it.

45. By filing this Notice of Removal, Erie does not admit any of the allegations in Plaintiffs' Amended Complaint. Erie expressly reserves the right to contest those allegations at the appropriate time.

WHEREFORE, this action is being removed from the Cuyahoga County Court of Common Pleas to this court.

Respectfully submitted,

*/s/ Kenneth A. Calderone*
Kenneth A. Calderone (0046860)
John R. Chlysta (0059313)
Hanna, Campbell & Powell, LLP
3737 Embassy Parkway, Suite 100
Akron, OH  44333
Telephone:  (330) 670-7324 / (330) 670-7305
Facsimile:   (330) 670-7440 / (330) 670-7442
Email:  kcalderone@hcplaw.net
            jchlysta@hcplaw.net

Adam J. Kaiser *(pro hac vice* forthcoming*)*
ALSTON & BIRD, LLP
90 Park Ave,
New York, New York 10016
Telephone:  (212) 210-9000
Email:  adam.kaiser@alston.com

*Attorneys for Defendant Erie Insurance Company*

## CERTIFICATE OF SERVICE

A copy of the foregoing *Notice of Removal* has been set this 3rd day of June, 2020, by electronic mail, pursuant to Fed. R. Civ. P. 5(b)(2)(E), to the following:

>David M. Paris, Esq.
>Jonathan D. Mester, Esq.
>Nurenberg, Paris, Heller & McCarthy Co., L.P.A.
>600 Superior Avenue East, Suite 1200
>Cleveland, OH 44114
>Email: dparis@hphm.com
>       jmester@hphm.com
>*Attorneys for Plaintiffs*

>*/s/ Kenneth A. Calderone*
>Kenneth A. Calderone (0046860)
>John R. Chlysta (0059313)
>*Attorneys for Defendant*

<<HCP #1113213